**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KEON S. LOGAN,** : | |
| : | |
| Petitioner, : | CIVIL NO. 3:CV-05-1937 |
| : | |
| v. : | (Judge Vanaskie) |
| : | |
| **CAMERON LINDSAY, et al.,** : | |
| : | |
| Respondents. : | |

**M E M O R A N D U M**

**I.   Introduction**

Petitioner, Keon S. Logan, an inmate at the Canaan United States Penitentiary ("USP-Canaan") in Waymart, Pennsylvania, commenced this action with a pro se petition for a writ of habeas corpus (Dkt. Entry 1) filed pursuant to the provisions of 28 U.S.C. § 2241. Respondents are the United States Parole Commission ("Commission") and the Warden of USP-Canaan, Cameron Lindsay.  Logan is challenging the denial of parole.  Respondents filed a response (Dkt. Entry 9) to the habeas petition, Petitioner has filed a traverse (Dkt. Entry 10), and the matter is ripe for disposition.  For the reasons that follow, the petition will be denied.

**II.   Background**

On December 18, 1998, Petitioner was sentenced by the District of Columbia ("D.C.") Superior Court to an aggregate term of imprisonment of fourteen (14) years for aggravated assault and carrying a firearm without a license.  (Dkt. Entry 9-2 at 4.)  Petitioner became

eligible for parole on October 20, 2002, and the Commission conducted his initial parole hearing on October 9, 2001.  (Id. at 6.)  The Commission has formulated guidelines to facilitate parole decisions for D.C. Code offenders, and they are codified at  28 C.F.R. § 2.80.  Under the guidelines, the prisoner is assigned a Salient Factor Score and a Base Point Score, calculated by adding applicable points from several categories.  28 C.F.R. § 2.80(b).  At his initial hearing, the Commission calculated a Salient Factor Score of 7 for Petitioner, which resulted in the addition of one point to his Base Point Score.  (Dkt. Entry 9-2 at 4.)   To this, the Commission added two (2) points for violence in the current offense, and one (1) point for "high level violence," yielding a total score of four (4) points.  (Id.)  Under 28 C.F.R. § 2.80(h), a point score of 4 results in a Base Guideline Range of 12-18 months.  The Commission then added 44 months, representing what the Commission initially determined to be the minimum amount of time Petitioner was required to serve prior to parole eligibility,[1] resulting in a Total Guideline Range of 56-62 months.[2]

---

[1] At Petitioner's reconsideration hearing on November 16, 2004, the Commission realized that it had erred in determining that Petitioner became eligible for parole after 44 months of imprisonment, and increased the number of months to parole eligibility to 54 months, which resulted in a modified guideline range of 66-72 months.  Petitioner does not challenge this recalculation in the instant petition.

[2] Although the Commission may also add months for disciplinary infractions, or subtract months for superior program achievement, no such adjustments were made in calculating Petitioner's guideline range of imprisonment.

The Commission decided not to parole Petitioner within this range, but instead ordered a reconsideration hearing in thirty-six (36) months. (Id. at 12.) The Commission set forth the following reasons for its decision:

> After consideration of all factors and information presented, a decision above the Total Guideline Range is warranted because you are a more serious risk than indicated by your Base Point Score in that your offense involved the unprovoked shooting of a victim after you pulled her into an alley and she refused your demands for her to engage in sexual [activity] with you. In addition, only four months earlier, you had committed an assault in Prince Georges County, Maryland.

(Id. at 10.)

On November 16, 2004, Petitioner received a reconsideration hearing ("rehearing"). (Id. at 13). At the rehearing, the Commission recalculated Petitioner's Total Guideline Range from 56-62 months to 66-72 months (see n.1, supra), and Petitioner was again denied parole. He was set for a three-year reconsideration in November, 2007. The reasons for the guideline departure were those provided after the initial hearing.

Petitioner then brought this habeas corpus proceeding. He claims that the Commission: (1) acted arbitrarily and capriciously in violation of his due process rights; (2) improperly double-counted factors in denying parole; (3) failed to consider his program achievements; (4) did not show "good cause" for a decision outside the guideline range as required by 18 U.S.C. § 4206; and (5) violated his Equal Protection rights.

3

**III.     Discussion**

     **A.  Due Process Challenge**

On August 5, 1998, the Commission assumed the responsibility of making parole-release decisions for all eligible District of Columbia Code felons, pursuant to section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, and D.C. Code Ann. § 24-209, and the District of Columbia Parole Board was abolished.  See D.C. Code Ann. § 24-131(a)(2) (formerly section 24-1231(a)(2)).  The determination of eligibility for parole for a D.C. prisoner has thus been committed to the discretion of the Commission by Congress.  See Muhammad v. Mendez, 200 F. Supp. 2d 466, 469-70 (M.D. Pa. 2002).

Since the Constitution itself does not create any liberty interest in parole, to prove a due process violation such an interest must emanate from state law, or in this case, District of Columbia law.  See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979).  "Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole."  Muhammad, 200 F. Supp. 2d at 470.  See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (holding that the District's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion).

4

Nevertheless, the Commission's discretion is not limitless.  "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (internal quotation omitted).

To determine parole eligibility, the Commission must (1) analyze the probability that the prisoner can live and remain at liberty without violation of the law, and (2) conclude his release is compatible with the welfare of society.  28 C.F.R. § 2.73(a)(2) and (3).  Although the guidelines establish a date of parole eligibility, the Commission may go outside the guidelines in exceptional cases where the gravity of the offense is "sufficient to warrant an upward departure from § 2.80 and denial of parole."  28 C.F.R. § 2.73(b).

Petitioner is challenging the denial of parole, and he claims that the decisions to deny parole at his initial hearing and at his rehearing were arbitrary and capricious. The function of judicial review on a petition for writ of habeas corpus in the parole context is to determine whether the Commission abused its discretion. Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000).  The court is not empowered to substitute its judgment for that of the Commission in evaluating a habeas petitioner's claims unless the Commission's exercise of discretion represents an egregious departure from rational decision-making.  See Hunterson v. DiSabato, 308 F.3d 236, 247 (3d Cir. 2002) (due process violation requires action that is "conscience shocking" or "deliberately indifferent."). The Third Circuit Court of Appeals has routinely

5

recognized that a federal court's review of a decision issued by the Commission is very limited. Furnari, 218 F.3d at 254.  The standard applied in such a review "'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" Id.  Nevertheless, the review should consider whether the Commission "'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'" Id.

Petitioner first claims that the Commission was required to apply the former D.C. Parole Board's guidelines, as opposed to the Commission guidelines found at 28 C.F.R. § 2.70 et seq. Petitioner is mistaken.   It is clear that "[t]he . . . Commission shall exercise authority over [D.C. offenders and the] rules in [§ 2.70 et seq.] shall govern the operation of the . . . Commission with respect to [D.C. offenders]."  28 C.F.R. § 2.70.

Petitioner also challenges the Commission's guideline departure.  The Commission has the authority to render a decision outside the guideline range if the "prisoner is deemed to be a . . . more serious risk than the guidelines indicate."  28 C.F.R. § 2.80(n).  The regulations specify that an "offender is a more serious parole risk than indicated by the total point score because of . . . (C) [u]nusual cruelty to the victim . . . (D) [u]nusual propensity to inflict unprovoked . . . violence, as demonstrated by the circumstances of the current offense . . . ." Id.

6

In this case, the Commission appropriately explained the departure, which was grounded in 28 C.F.R. § 2.80(n).  The Commission stated that it based its guideline departure upon a recent prior assault as well as the fact that his current offense involved the unprovoked shooting of a victim after he pulled her into an alley and she refused his demands for oral and anal sex.  (Dkt. Entry 9-2 at 8 and 10.)   The stated factors fully comport with the considerations set forth in 28 C.F.R. § 2.80(n)(2)(ii) to support a conclusion that Petitioner poses a more serious risk than indicated by his total point score.

The Commission is afforded wide discretion in making the necessary evaluation, and the nature of Petitioner's offense is a relevant factor in making that determination.  Harris v. Martin, 792 F.2d 52, 55 (3d Cir. 1986).  Although Petitioner claims that the instant offense was an act of self-defense in a drug transaction gone bad (Dkt. Entry 9-2 at 6), the hearing examiner concluded that "the information in the police report is more credible than [Petitioner's] statement . . . [and] it is more likely than not that he was involved in [a sexual assault of the victim]."  (Id. at 7.)  Pursuant to the standards set forth in Furnari, 218 F.3d at 254, the Court finds that the Commission articulated a rational basis for its determination to depart from the guideline range, and did not abuse its discretion.  Accordingly, Petitioner's due process claim will be denied.

### B. Double-Counting

Petitioner also alleges the Commission impermissibly double-counted "the same factors in calculating Petitioner's Salient Factor Score and Base Point Score, in departing from the

guidelines to deny parole at [the] initial hearing, and then agains (sic) in departing from the guidelines to set-off Petitioner's hearing by thirty six months." (Dkt. Entry 1 at 13.) Respondents argue that Petitioner's double-counting claim is without merit.

Double-counting occurs when the Commission considers the same factors as a basis for guideline departure that it used either to place the inmate in a particular severity category or to calculate his Salient Factor Score, or both. Malik v. Brennan, 743 F. Supp. 639, 644 (W.D. Wis. 1990), aff'd, 943 F.2d 54 (10th Cir. 1991). The Third Circuit Court of Appeals concluded that "[s]ince the purpose of the guidelines is to set forth the factors that the Commission should consider in setting a presumptive release date, it would be irrational and arbitrary to use those same factors to take a prisoner outside the guidelines." Harris v. Martin, 792 F.2d 52, 54 (3d Cir. 1986); see Romano v. Baer, 805 F.2d 268, 271 (7th Cir. 1986) (holding that double-counting constitutes an abuse of discretion.) See also Castaldo v. United States Parole Commission, 725 F.2d 94, 96 (10th Cir. 1984) (holding that the Commission's decision to exceed the guidelines requires something more than the standard reasons for within-guideline denial; in other words, "good cause" for continued incarceration must be established."); Briggs v. United States Parole Commission, 736 F.2d 446, (8th Cir. 1984) (noting that the factors which the Commission recited in determining Briggs' offense severity and Salient Factor Score "may not also be utilized as justification for deviating from the guidelines . . . The reasons for

8

deviating from the guidelines must be beyond and apart from the factors the Commission uses in applying them.").

Here, Petitioner does not point to anything in the record to support a conclusion that double-counting has occurred. Although the Commission added two points to Petitioner's Base Point Score for violence in the current offense and one point for high level violence (which includes offenses in which the offender intentionally discharged a firearm under 28 C.F.R. § 2.80(g)(2)(x)), this calculation does not account for Petitioner's "unprovoked shooting" (Dkt. Entry 9-2 at 10) of the victim. Moreover, although the guideline calculation may have accounted for prior offenses, it did not encompass the Petitioner's prior assault in Maryland in an incident of domestic violence. Finally, his scoring did not include the fact that the unprovoked shooting occurred because the victim refused to engage in sexual acts with Petitioner.[3]

The Commission may "weigh the particular nature of an offense as an aggravating factor even if the offense itself was accounted for in setting the guideline range." Thomas v. Brennan,

---

[3] Contrary to Petitioner's contention, the Commission may rely upon evidence of conduct for which he was not prosecuted. In this regard, it is not this Court's function to decide whether Petitioner's version of the offense is correct. As noted above, the issue here is whether there is "'a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" Furnari, 218 F.3d at 254. The police report of the incident giving rise to Petitioner's conviction affords an ample basis for the Commission's conclusion that the particular circumstances of the offense conduct warrant a parole decision above the guideline range. See Taquee v. United States Parole Commission, 110 Fed. Appx. 130, 131 (D.C. Cir. 2004)

961 F.2d 612, 620 (7th Cir. 1992). In this case, the Commission exercised its considerable discretion in assessing the particular nature of the offense and the existence of a separate incident of violence in determining that parole within the guideline range was not appropriate. The Commission's consideration of these factors does not amount to double-counting.

### C. Program Achievement

Petitioner claims that the hearing examiners failed to acknowledge his program achievements at his initial hearing and at his rehearing. Although the rules provide for an adjustment for program achievement, the guidelines "presume that the prisoner will have ordinary program achievement," and adjustment is made only for superior achievement, i.e. "achievement that is beyond the level that the prisoner might ordinarily be expected to accomplish." 28 C.F.R. § 2.80(e).

It is clear from the record that Petitioner's program achievements were acknowledged and considered at his initial hearing (see Dkt. Entry 9-2 at 6), as well as at his rehearing. (Id. at 13.) The Commission exercised its discretion in concluding that Petitioner's program achievements were not superior. It is not this Court's prerogative to second-guess that determination. See Thomas, 961 F.2d at 619. Accordingly, this claim is also without merit.

### D. Guideline Departure

Petitioner further claims that the Commission did not have good cause to depart from the guidelines as required by 18 U.S.C. § 4206. As previously stated, the applicable statute for

10

parole decisions related to D.C. offenders is the D.C. Code and not the federal parole statute. Since 18 U.S.C. § 4206 is a federal parole provision, it does not apply to D.C. offenders. The applicable D.C. Code provision commits the parole decision to the discretion of the paroling authority.  See D.C. Code § 24-404(a).[4]  Furthermore, the regulations authorize departures outside the guidelines in "unusual circumstances." 28 C.F.R. § 2.80(n)(1). Because the Commission identified circumstances that distinguished Petitioner's criminal conduct and record, it was indeed authorized to decide that a sentence above the guideline range was warranted.  Accordingly, this claim will be denied.

### E. Equal Protection Claim

Although Petitioner argues that the Commission's decisions have violated the Equal Protection Clause of the United States Constitution, the Petitioner does not point to evidence in the record, and the Court does not find any, to support such a claim. The Equal Protection Clause requires that all people similarly situated shall be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Other than his bare assertion of a "gross

---

[4] Section 24-404(a) provides:

Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

disparity in treatment for prisoners in petitioner's category" (Dkt. Entry 1 at 20), Petitioner does not provide any support for this assertion.  Accordingly, Petitioner's Equal Protection claim will be denied.

## IV.    Conclusion

The Commission's decisions had evidentiary support in the record. The Commission's guideline departure has a rational basis.  The Commission did not impermissibly double-count Petitioner's offenses.  Finally, Petitioner has provided no evidence of an Equal Protection violation.  Accordingly, the habeas corpus petition will be denied.  An appropriate order follows.

                                              **s/ Thomas I. Vanaskie**
                                              Thomas I. Vanaskie
                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEON S. LOGAN,** | : | |
| | : | |
| Petitioner, | : | CIVIL NO. 3:CV-05-1937 |
| | : | |
| v. | : | (Judge Vanaskie) |
| | : | |
| **CAMERON LINDSAY, et al.,** | : | |
| | : | |
| Respondents. | : | |

## O R D E R

**AND NOW, THIS 22nd DAY OF NOVEMBER, 2006,** in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus (Dkt. Entry 1) is **DENIED**.

2. The Clerk of Court is directed to mark this matter **CLOSED**.

                                                **s/ Thomas I. Vanaskie**
                                                Thomas I. Vanaskie
                                                United States District Judge